Proceed next to argument in Number 21-2301 Miller v. Brightstar Asia Mr. Kroc Good morning, Your Honors. May it please the Court. My name is Paul Krogh. I'm here on behalf of the appellant, Tyler Miller. With the Court's permission, I'll reserve three minutes for questions. Eight years ago, this Court rightly looked askance at the idea of extending Delaware's Thule decision beyond its context and rationale. Here, the Court faces a similar question concerning El Paso Pipeline v. Brinkerhoff. This case lies beyond El Paso's holding in its rationale and context for at least three reasons. One, Mr. Miller has a separate and distinct contractual right in the form of his options, something the El Paso plaintiff didn't have. Two, Mr. Miller isn't seeking a pro rata share of a corporate loss, something the El Paso plaintiff- Certainly, Your Honor. Mr. Miller sold a little over half of his interest in a corporation to the defendant. They signed a shareholders' agreement that gave Mr. Miller the option to rebuy his interests that he had sold or to make the defendant buy the rest. We allege that the defendant then essentially manipulated the corporation's operations to take the value of those option rights. And Mr. Miller has sued, and the only claims he's pursuing on appeal are those related to the demunition in his- the devaluation of his option rights. And the district court said that, well, that's a derivative claim. When it said Thule applies, you have to use the Thule two-part test, and then applying Thule- You need Thule to decide whether it's a direct or derivative. Yes, Your Honor. Wait, do you- doesn't Thule only apply when it's a right of the corporation or it's a fiduciary breach? Correct, Your Honor. So if, in fact, you could show that there was a right that Mr. Miller had in the contract, Thule wouldn't even apply. That's our principal argument, Your Honor. Yes, sir. Right. So for count one, you're talking about paragraph 14, right, which is the- Correct. Conflicted transactions. Yes. Now, that seems to be a duty owed to the company. It's certainly a corporate-focused standard. I think maybe- so it seems like there's an argument that Thule applies there, but I want to focus on your count three, which is the violation of good faith and fair dealing. Yes, Your Honor. I guess there your argument is that it's a breach of paragraph 10 of the agreement, right? I believe so, yes, Your Honor. Right, and so paragraph 10 is Mr. Miller's own option, right? Correct, and- So you're saying that that is a duty to him, and so, therefore, Thule wouldn't apply. Correct. But they didn't breach paragraph 10. Not- But your argument is that there's a duty of good faith and fair dealing not to eviscerate his ability to take advantage of his option, right?  And that's why he breached. Yes, Your Honor. And so that, I guess you would say, is a duty that's owing to Miller and not to the company. Correct, and that's- Now, I guess here's my question. So it's kind of intuitive to say that there is that duty of good faith and fair dealing that's owed to Mr. Miller, but the contract addresses conflicted transactions. So does that mean we can't read into it another duty to avoid conflicted transactions that's owed to Mr. Miller? Is the contract complete on all of the duties about conflicted transactions? About conflicted transactions, I think we can't utilize good faith and fair dealing under Delaware law. But not all of the misconduct that we allege was conflicted transactions. There was also the claim about how they caused the company to stop refurbishing as many phones and they loaded it up with intercompany debt. Not just that they put in managers who misspent company assets and decreased its earnings. Not just through conflicting transactions, but through other forms of misconduct as well. And so, for those reasons, there is room for good faith and fair dealing to do. Even under paragraph 14, Your Honor, we would submit that Mr. Miller has a personal stake in enforcing that standard because he has the personal option right. And he should have a right to choose to exercise that option free from mismanagement by the defendant. Suppose instead of retaining part of his shares, Mr. Miller had retained an interest in a patent or a building that derived value from the company's operations. And he had negotiated the same sort of option that had these internal financial pricing variables. If the company had done the same sort of things to tank the value of his option to rebuy or sell that building or that patent, the case would be analytically the same. And we would never say that in that context the claims were derivative, even if he weren't a shareholder. By making the claims derivative here and applying truly even to begin with, we're saying that he has fewer rights just because he's a shareholder than he would in an analytically identical context if he weren't a shareholder. So for those reasons, we think that Mr. Miller — And it's a lawsuit just from an option holder? Correct, Your Honor. Okay. Like some of the cases we cited where people had — the Albers case where individuals had options and they were suing because of the legal — It's an option to buy shares, right? It's hard to disentangle that from his status as a shareholder, isn't it? It's certainly not an option to sell the shares. I mean you have to own the shares to sell the shares, certainly. But I don't think it's — he's not asserting rights that he owns because — not asserting rights he has because he owns the shares. He's asserting rights he has because he has the right to sell them back. Like the right that he has just as a shareholder would be the same ones as the El Paso plaintiff had, right? The right to have — You're saying that if Mr. Miller didn't retain any shares but just had the option to purchase them in this contract, would it be clear that he could sue for a breach of paragraph 14 without bringing a derivative suit? I think that's the only option he — only option he would have. Because if he had only held an option, he wouldn't be allowed under Delaware law to sue derivatively. So it would have to be direct or the right would have to be nugatory. And we don't read contracts that way. So, yeah, we don't think that this is really a claim that plausibly could belong to the corporation, in the language from Citigroup, because the corporation doesn't own the options, can't exercise them, and wouldn't benefit from them. Thank you, Your Honor. Thank you very much, Mr. Krogh. You reserve time for rebuttal. We're here now for Mr. Sayles. Good morning, Your Honors. Peter Sayles on behalf of the appellee. Your Honor, your question was very interesting. I'm sorry, you should know that you are not — we certainly won't require you to take your mask off, but you are free to do so. Thank you, Your Honor. Your Honor, your question was very appropriate. And, you know, the way I view this case is the shortest path between two points is a straight line. And that straight line is first, as Your Honor noted, El Paso. That is the first stopping point in this line. And El Paso asks us, or tells us, before we apply Thule, we have to understand whose claim it is. Is it the company's, or is it the shareholder's? Assuming it is the company's, then you turn to Thule, which has two points. Who suffered the alleged harm, and who would receive the benefit? Thule goes on to tell us that, in other words, can the appellant — in this case, appellant — prevail without showing an injury to the corporation, which is Harvestar? Now, I think it's particularly interesting when you look at the complaint. The only counts that are still being pursued are Counts 1 and Count 3. Count 1 is the breach of the conflict transaction, which is Paragraph 14, Your Honor. And that is akin to Bacchus, as this Court has ruled in the past. And that is, a transaction between the company or subsidiaries thereof and an investor or other business will be on the terms no less favorable to the company. So it is clear from that provision that that is the company's right to enforce. So Count 1 must be analyzed under Thule. With regard to Count 3, the only other count still in play is the breach of the implied covenant — or, excuse me, duty of good faith and fair dealing. Now, what has the appellant articulated in its complaint, in the amended complaint, which is at the Joint Appendix at 117? They've alleged mismanagement of Harvestar by the appellee. One, through the conflicted transactions. So they're double-dipping on that. Yeah, but after you just gave this whole speech about how Step 1 is to determine who the right belongs to, you're now skipping ahead to, like, to who it harms. So if you think about who the right belongs to, so if we think about a breach of Paragraph 10, that is a right that belongs to Mr. Miller, right? He is a signatory to the contract. He has an option right. I am talking about whose right it is on Count 3, Your Honor. And it's notable that Mr. Miller has not asserted a breach of Paragraph 10. He has not asserted a breach of Paragraph 10 in the complaint. Well, his argument is that there's a breach of the good faith — the duty of good faith and fair dealing that made it impossible for him to take advantage of his rights under Paragraph 10. What he's alleged in his complaint, Your Honor, respectfully, is that the breach occurred due to the mismanagement. The conflicted transactions — Well, I understand that. But let's say that the companies weren't even parties to the contract. Let's say there's just a separate contract that's an options contract where it's Mr. Miller and Brightstar, the counterparties. And so we don't even deal with the question about whether there's a duty to the company. If, in fact, his options rights were a function of the health of the company and Brightstar took some action to dissipate its assets or mismanage it such that his option rights were unexercisable, wouldn't that be a violation of the duty of good faith and fair dealing? To whom, though, Your Honor? That's the question. What he's alleged — Well, in my hypothetical, there's no duties to the company at all. It's just a contract with him. So then in that hypothetical, I think you'd agree there would be a breach of a duty to Mr. Miller, right? If there are — So why is it different if in the contract there are also some duties that are owed to the company? Your Honor, these — the allegations in the complaint are that the appellee decreased, as you said it, the health to the company. They decreased the volumes, Harvestar's volumes. They decreased — or excuse me, they caused the EBIT to be negative, and they caused Harvestar's debt to increase. Those are all focused on actions taken as to — by an appellee to Harvestar. His claim is what those actions did was it made it impossible for him to take advantage of the rights that he himself personally contracted for in the contract, which is the option rights. I disagree, Your Honor. What he's alleged is that those actions caused by allegedly — appellee to Harvestar have decreased the value of Harvestar. So the actual harm, the breach that occurred was — But he's not trying to recover damages for harm to Harvestar, right? He's trying to recover damages to the dissipation of his — the value of his options rights. I respectfully disagree once again with you, Your Honor. What he's trying to do is he is trying to effectuate the formula, which is in his response to the motion to dismiss, he breaks it down. That's at JA-189, and that is five times the Harvestar EBIT over the Harvestar volume times the Harvestar volume, again, times the appellee's ownership interest minus the Harvestar's debt times the appellant's ownership percentage. So what he's trying to do is he is trying to say they harmed Harvestar. And due to my ownership percentage, I have been harmed. And that breach, that breach — So you're saying that because his options rights are a function of the health of the company, it's impossible for him to sue over a breach of any duties owed to him because it's just intertwined with the health of the company. And so even though he has his own rights under the contract, he can't ever sue for harm to those rights except through a derivative action. Your Honor, the nature of a derivative action is that the prospective beneficiary is getting it derivative of the entity. And in this case, he has alleged that the appellee — He doesn't get these options rights as a shareholder. He gets them as a counterparty to this contract, right? The shareholder agreement is the basis of that put right or that call right, the put and the call right. So he is getting it as a result of his shareholder — the nature of his shareholder position. It is a shareholder agreement. And while there may be independent rights owed to a shareholder, the actual allegations that he has led — A derivative action is for shareholders to vindicate harms against the company, right? Correct. So if he is trying to recover for harms to his own rights that are his personally in the contract, why is that an appropriate subject of a derivative action? Your Honor, under a shareholder derivative, a typical shareholder derivative case, the shareholder has a right to sell his shares. And that is a right of the shareholder. However, if that right is derivative of the value of the company, one must bring a derivative action. And the recompense of the lawsuit would go to the company. So you're saying that even though he has this option right in the contract that's special to him, we shouldn't treat it as any different from any shareholder upset about the decline in value of his or her shares? What I'm saying — What I'm saying, Your Honor, is he has not asserted a claim under Section 10. He hasn't tried to exercise it. He hasn't asserted a breach. He is merely trying to — But he can't exercise it because it would not be — it's worthless now, right? That's what the allegation is. But he has never attempted to exercise it at any time. Nor has the other shareholder. And what he's alleged is these actions taken against Harvistar, decreasing Harvistar's volume, increasing Harvistar's debt, causing the — So I'm sorry. Is it a problem with the allegations or with the principle? I guess I — It's — So if, in fact, he had alleged very clearly, let's say there was no ambiguity about it, I am suing because I had a right under paragraph 10 to an option. And because of the defendant's conduct, I can't take advantage of that right. Your Honor, I think — and I apologize that I'm being contrarian. But I believe your focus is misplaced. The focus, in my opinion, and I believe in the opinion of the other cases, is what allegation have you alleged was breached or what right was breached? He hasn't alleged the right under 10 was breached. That's just the resulting damages. Putting aside the allegations in this case, would it be possible, if we were writing a new complaint today, for him to sue for breach of paragraph 10? I don't know, Your Honor. I would have to see those — Or a violation of duty of good faith and fair dealing that undermines his rights under paragraph 10. I don't know. I would have to see those allegations, Your Honor. I mean, I can't answer that hypothetical. All I can answer is the allegations in the complaint are that Mr. Miller has alleged Brightstar decreased the value of — by taking actions against Harvestar. That's the breach that he has alleged. His resulting — his claim for resulting damages is a result of paragraph 10 in the formula, which I stated, which is dependent upon the value of the corporation and his ownership percentage. Okay. Thank you, Mr. Sales. Thank you, Your Honor. We'll turn back to Mr. Krogh on that. Thank you, Your Honors. Mr. Miller is emphatically not suing to recover any decrease of value in Harvestar or his pro rata share of any decrease in the value of Harvestar. Nor is he suing, at least in the current form of the proceedings, for specific performance of the paragraph 10 option formula. For one thing, the option expires in June and won't be prospectively exercisable. Your Honor, you had it exactly right that we're suing because we've been deprived of the fair opportunity to exercise the option in the appropriate time and context. It's really a lot like Citigroup. And it's a lot like a case that the Delaware Tensory Court decided in January, the Inouye Multiplan Corporate Stockholders litigation, where the plaintiffs had redemption rights to redeem their stock before a major transaction. And there were, it was mismanagement and fraud, and they were deprived of the opportunity to do that fairly. And the court said, the court applied tooly there and said, no, that's direct. And so we've alleged in paragraph 54, I believe, of the complaint that the diminution in Mr. Miller's put option is over $6 million. Well, he only owns 24.5 percent of the company. And so, right, if you were just going to put money into Harvestar to compensate him for that, you'd have to pay over $12 million. And that's not how this works. He would be entitled to get his $6 million for the loss of value of the asset, the right that he had. It's not something you can compensate him for just by putting money into Harvestar, partially because of the formula. Well, what about Mr. Sales' argument that he is seeking a recovery for a diminution of the value of the shares, which is a function of the health of the company, and that's like a shareholder? So that might suggest applying tooly, but here we're not simply seeking the diminution in the value of the shares. We're seeking diminution in the value of the put option right. Now, the shares that he owns might have a market price that has gone down, and we're not seeking compensation for that. The option has an artificial price. It's not the market price. And so if it were just the market price, if it were you could sell at the market price, you know, the per letter percentage of the company, it would be a different case. But we have the specific formula that gives him a specific interest in these specific financial factors in the operation of the company. And so for those reasons, either undue tooly or without it, Your Honor, we submit that the case should be direct. Thank you very much. Mr. Krogh, the case is submitted, and because that is our last argued case on the calendar for today, we are adjourned. Thank you, Your Honor. Court is adjourned.